ETHAN JACOBS (SBN 291838)
Ethan Jacobs Law Corporation
ethan@ejacobslaw.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845

Attorneys for Plaintiffs
Fakhria Zahir and Shabnam Zahir

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAKHRIA ZAHIR and SHABNAM ZAHIR,<br><br>  Plaintiffs,<br><br>v.<br><br>RICHARD ZAHIR a/k/a RISHAD ZAHIR,<br><br>  Defendant. | Case No.: 2:25-cv-782<br><br>**COMPLAINT FOR DECLARATION OF CO-OWNERSHIP UNDER THE COPYRIGHT ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Fakhria Younossi Zahir ("Fakhria") and Shabnam Ahmad Zahir ("Shabnam") assert the claims below against Defendant Richard Zahir a/k/a Rishad Zahir ("Richard").

**INTRODUCTION**

1. Ahmad Zahir ("Zahir") was a prolific Afghan musician and performer who passed away in 1979, leaving behind a catalog of musical compositions and sound recordings (the "Zahir Catalog"). Zahir died without a

1

COMPLAINT

will, and so his surviving relatives inherited ownership of the Zahir Catalog: his widow, Fakhria; their daughter, Shabnam; and Richard Zahir, Zahir's son from an earlier marriage.

2. In 2012, Shabnam observed rampant piracy of her father's music and contacted Richard, proposing a collaborative effort to protect their father's music. While Richard initially expressed interest and suggested meeting to devise a plan, he later postponed their discussions through a series of emails and ultimately dismissed the importance of addressing the copyright issue.

3. Without informing Plaintiffs, Richard exploited the Catalog for his benefit alone, uploading its content onto various streaming services and collecting significant revenues. He failed to share these revenues with Fakhria and Shabnam and concealed his actions from them.

4. Before they learned about Richard's conduct, Fakhria and Shabnam tried to register the copyright for the Zahir Catalog on behalf of all three parties in Afghanistan. Richard responded by intervening to claim Plaintiffs were only posing as Zahir's widow and daughter and therefore had no claim to the Zahir Catalog. His efforts delayed registration until the Afghan government collapsed in 2021.

5. Plaintiffs then registered some of the works in the Zahir Catalog in the United States, but learned in 2024 that Richard was claiming exclusive ownership and exploiting the Zahir Catalog on multiple online platforms.

Although Plaintiffs tried to negotiate with him to share the revenues with his co-owners, he refused.

6. Because Richard denies Plaintiffs' rights, Plaintiffs seek a declaratory judgment that they are co-owners of the Zahir Catalog; an accounting of Richard's exploitation of the Zahir Catalog; and an award of their share of the revenues from that exploitation.

## THE PARTIES

7. Plaintiffs Fakhria and Shabnam are natural persons residing in Virginia and North Carolina respectively.

8. Defendant Richard Zahir is a natural person residing in Somis, California. Richard is the only child from Zahir's first marriage to Najia Zaman, which ended in divorce.

## JURISDICTION AND VENUE

9. This claim arises under the Copyright Act, 17 U.S.C. § 101, *et seq.* Plaintiffs seek a declaration of ownership for copyrights in musical works and sound recordings first published in Afghanistan and protected by the Berne Convention for Literary and Artistic Works ("Berne") and the WIPO Copyright Treaty (for the musical works) ("WCT") and the WIPO Performances and Phonograms Treaty (for the sound recordings) ("WPPT"), all of which both the United States and Afghanistan have acceded to, and by Section 104(a) and/or 104(b) of the Copyright Act.

10. This Court has jurisdiction over the subject matter of this claim pursuant to 28 U.S.C. §§ 1331 and 1338.

11. Personal jurisdiction is proper over Richard because he resides in this District.

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Richard is a resident of California, the state in which this District is located.

## FACTUAL BACKGROUND

### A. Zahir and His Legacy

13. In Afghanistan, between 1962 and 1979, Zahir became a cultural and musical icon. Zahir is widely regarded as the most celebrated Afghan musician in history, and his impact was profound.

14. Zahir composed almost 400 songs and recorded over 500 songs on around 22 albums. He was a beloved Afghan singer, songwriter, composer, and musician whose legacy and influence over Afghan music persists today, over forty years after his death. For decades, members of the Afghan community and fans across the world have embraced Zahir's legacy. Zahir was also an outspoken advocate for democracy, which increased his national and international recognition. The Western media often referred to Zahir as the "Afghan Elvis," and he was so influential that when he died, the streets flooded with mourners for his funeral and schools were closed nationwide. National Public Radio (NPR)

named Ahmad Zahir one of the 50 Great Voices in world history for his profound influence on music and culture. Today, an FM radio station in Kabul is devoted to broadcasting only Zahir's music.

15. On June 14, 1979, Zahir died suddenly at age thirty-three and without a will.

### B. Zahir's Family

16. Richard is the child of Zahir's first marriage to Najia Zaman ("Najia"), which ended in divorce in 1973.

17. After the divorce, Najia and Richard moved from Afghanistan to California and became estranged from Zahir and his family.

18. Zahir met Fakhria in 1974, and they married in 1976 in Kabul, Afghanistan. Near the end of 1978, Fakhria and Zahir learned they were expecting a baby together. When Ahmad Zahir was killed on June 14, 1979, the trauma of his death induced Fakhria into premature labor. Their daughter, Shabnam Ahmad Zahir, was born on the night of Zahir's death.

19. Fakhria and Shabnam remained in Afghanistan for a year after Zahir's death. During that time, Fakhria dedicated herself to completing the construction of Zahir's mausoleum, where his fans could honor his memory and legacy. Fakhria sold most of her possessions to fund the project.

20. During this period, the newly empowered Soviet-backed communist regime placed Plaintiffs, along with many others, under house arrest in an attempt

to suppress dissent and maintain control amid growing political instability. With the help of political connections, Fakhria fled with her daughter to the United States, where they sought asylum. Less than five months after they escaped with a single suitcase and a diaper bag, over 30,000 Soviet troops invaded Kabul.

21. In 1981, Zahir's first wife, Najia, contacted Fakhria and expressed interest in maintaining a connection between Zahir's children. In the summer of 1982, Najia asked Fakhria if Richard could visit them in Virginia to get better acquainted. Richard then visited Fakhria and Shabnam at their home.

22. In 1985, Najia moved to Northern Virginia to be closer to Plaintiffs. While searching for a home, Najia and Richard lived with Fakhria for several months. Fakhria even helped Najia find a job in Virginia. The two families remained in frequent contact, and Fakhria reconnected Richard and Najia with Zahir's family, helping ensure that Richard retained a connection to his paternal family. In 1998, Fakhria and Shabnam attended Richard's wedding in California, during which, at Richard's request, both Najia and Fakhria (to whom Richard affectionately referred to as his "second mother") walked Richard down the aisle.

**C. Plaintiffs' Initial Attempts to Cooperate With Richard to Protect Zahir's Music**

23. When Fakhria arrived in the United States in 1980, the political tumult in Afghanistan meant it was impractical to try to assert rights in the Zahir Catalog in Afghanistan. Instead, she focused on supporting her daughter, taking on two jobs.

24. Over time, Fakhria and Shabnam noticed Ahmad Zahir's albums being sold in stores across the United States and Europe, with CDs and cassettes widely available to fans of his music, although they had never authorized those sales or received proceeds from them.

25. In 2012, Shabnam discovered her father's music was being sold by unknown parties on several digital platforms. She contacted her half-brother, Richard, to suggest that they work together to stop others from exploiting Zahir's works. Richard initially responded positively to the suggestion.

26. When Richard's mother passed away in 2015, Shabnam attended the funeral. She attempted to revisit the matter of policing the infringement of bootleg sales with Richard at that time, but he dismissed the issue, calling it a "lost cause."

**D. Plaintiffs' Attempts to Register the Zahir Catalog in Afghanistan**

27. Plaintiffs moved ahead to protect the Zahir Catalog without Richard's help. They began registering some works from the Zahir Catalog with the U.S. Copyright Office in 2016 with the help of the George Mason University's Arts & Entertainment Advocacy Clinic at Antonin Scalia Law School. At the time, however, Afghanistan had not yet acceded to any international copyright or neighboring rights (sound recording) treaties. Ultimately, Shabnam lobbied the Afghan Embassy for support. She became personally involved in the effort, publicly sharing her father's story and his

COMPLAINT

legacy, and advocating for Afghanistan's accession to the Berne Convention—a treaty that would help not just the legacy of the prolific body of Zahir's musical works but would also help countless Afghan artists protect their creative works from piracy.

28. These efforts bore fruit: on June 2, 2018, Afghanistan joined the Berne Convention, marking a historic milestone for Afghan artists and aligning Afghanistan's copyright laws with international standards. Those protections also extend to preexisting works, such as Zahir's musical compositions.

29. On July 24, 2018, Fakhria filed a Notice of Intent to Enforce (NIE) with the U.S. Library of Congress, claiming ownership of the entire Zahir Catalog. On February 4, 2019, the U.S. Library of Congress published the NIE, signaling a clear, public assertion of ownership of the Zahir Catalog by Fakhria. Fakhria made this claim with the intention of securing the rights for herself to allow her to distribute the proceeds to both of Zahir's children.

30. Later, effective February 9, 2021, Afghanistan acceded to the WCT and WPPT, the latter of which protects sound recordings, also retroactively, thus protecting Zahir's musical compositions and recordings.

31. In 2020, after Berne and the other international treaty accessions, Plaintiffs sought to register Ahmad Zahir's musical compositions and sound recordings with the newly established Copyright Office of Afghanistan at the Afghan Ministry of Information and Culture ("AMIC"). Plaintiffs identified

Richard as a co-owner during the application process.

32. This year-long process was days from completion in 2021 when Plaintiffs received some shocking news from the Director at AMIC: someone claiming to be affiliated with Richard had contacted AMIC, claimed Richard alone owned the Zahir Catalog, and threatened AMIC with legal retaliation if Plaintiffs were included or mentioned in any way in the registrations.

33. Plaintiffs learned second-hand that Richard's family had hired a group of lawyers to assert that he was Zahir's sole heir, that Fakhria was dead, and that Plaintiffs have no claim to his music and to demand that Plaintiffs' names be removed from the Afghan copyright registration.

34. Because this conduct was inconsistent with their previous exchanges with Richard, Fakhria and Shabnam initially did not believe Richard was behind it. Shabnam reached out to Richard to confirm or deny what she had heard and to encourage him to work together to protect Zahir's rights. But as he had done in recent years, Richard did not respond, ignoring emails, calls, and texts and a certified letter sent on December 18, 2020.

35. AMIC addressed Richard's objections, explaining that there was no doubt that Fakhria was Zahir's widow and Shabnam was his daughter. AMIC informed Richard that Plaintiffs intended to share the music's rights with him and had included his name in the registration as co-owner. Richard then demanded that AMIC require Fakhria and Shabnam to prove their relationship with Ahmad

Zahir.

36. Fakhria and Shabnam provided AMIC with extensive and detailed documentation substantiating their claims as co-owners of the Zahir Catalog. Despite their full satisfaction of the requirements, Richard denied the documentation was adequate, refused to acknowledge that Fakhria was Zahir's wife and Shabnam is Zahir's daughter, and refused to participate in formalizing an agreement. His refusal to engage in the registration process obstructed AMIC's ability to move forward, and the application was placed on hold.

37. A few weeks later, in August 2021, the United States completed its troop withdrawal from Afghanistan. The Taliban soon recaptured Kabul, banning the registration of copyrights in music and halting the operations of AMIC and other related government offices. This action was part of a broader policy by the Taliban that restricted cultural and artistic activities, similar to their bans on women and girls working and attending school. Fearing Taliban reprisals, most AMIC staff either fled the country or went into hiding.

38. In 2022, still determined to make progress in perfecting the protection for Zahir's works and recordings, Plaintiffs applied to register a single album, "Ahange Zindagi, Vol. 13," with the U.S. Copyright Office. Consistent with Plaintiffs' longstanding intent to acknowledge and include Richard as a co-owner, they identified Plaintiffs and Richard as co-owners and the album was registered with an effective date of November 1, 2022 (SR-412-912).

### E. Richard's Attempt to Claim Sole Ownership of the Zahir Catalog

39. Shabnam has been working on an independent documentary about her father's life, legacy, and mysterious death.[1] Before she began the project, she contacted Richard in to inform him of her plan, as a courtesy. At the time, Richard expressed his support for the project. The documentary, which has been in production for years, has been funded primarily through Shabnam's personal savings, supplemented by contributions from crowdfunding.

40. In January 2024, Defendant or someone acting on his behalf issued a takedown request to YouTube, asserting that a promotional video for Shabnam's documentary film project about Zahir's life, infringed music recordings by Zahir.

41. On January 12, 2024, Richard emailed Fakhria to assert that he is the sole heir to the rights in the Zahir Catalog. This was the first time Plaintiffs had heard from Richard for almost ten years, and it confirmed his involvement in the interference with AMIC. In the email, Richard falsely claimed that AMIC "emailed me and confirmed that neither you, nor Shabnam have any record of being related to my father in the official registry, which also confirmed that you were never legally divorced from your previous husband and therefore could not legally marry my father. And this has also been confirmed to me by family members and my father's friends." None of those claims are true, and they are rebutted by documents and multiple eyewitnesses.

---

[1] *See* www.ahmadzahirdoc.com.

COMPLAINT

42. Richard's email also threatened to sue Plaintiffs and claimed Shabnam's efforts exposed her to "prison time" because, according to Richard, her claim that she was an owner of the Zahir Catalog was "perjury and fraud" that constitute "a federal crime."

43. Plaintiffs retained counsel, who attempted to negotiate a resolution of the ownership dispute, but Richard and his counsel refused. They moved the goalposts after each interaction, demanding more or different information.

44. On July 24, 2024, at Richard's request, Plaintiffs provided Richard with a detailed and fully transparent breakdown of their lifetime royalties from licenses to works in the Zahir Catalog—a modest total of $22,306.67. Plaintiffs informed Richard that they set up an escrow account for Richard's share. Plaintiffs then asked Richard to provide a similar lifetime accounting of his revenues from the Zahir Catalog, but he refused.

45. And Richard continued to maintain the position that Fakhria and Shabnam were not Zahir's heirs. The shifting grounds he asserted—all of which are false—include that Fakhria was not divorced from her first husband before marrying Ahmad; that she and Zahir never had a valid marriage ceremony; that their marriage was not valid because it was not properly witnessed; that Shabnam could not be Zahir's biological child because she was born over nine months after his death (instead of the same day); and that the documents Plaintiffs' counsel provided in July 2024 to prove their identities and relationship to Zahir were

forgeries. Richard did not, at least, repeat the claim Fakhria had died, but negotiations were unproductive, forcing Plaintiffs to bring this action.

### F. Richard's Use of Royalty Collection Services

46. On January 30, 2024, Plaintiffs learned that Richard had used third-party royalty collection services, including TuneCore and CD Baby, to claim and collect revenues from the Zahir Catalog.

## FIRST CAUSE OF ACTION

### (Declaration of Co-Ownership Under the Copyright Act)

47. All of the allegations above are incorporated by reference.

48. If Richard is a legitimate heir to any rights in the Zahir Catalog, he is, at most, a co-owner in those rights with Plaintiffs.

49. On information and belief Richard has exploited the Zahir Catalog and obtained revenues from that exploitation totaling several hundred thousand dollars. But he has refused repeated requests to account to Plaintiffs for their share as co-owners.

50. Richard's refusal to account to Plaintiffs is in violation of his obligations as a co-owner.

51. Plaintiffs are thus entitled to a determination of co-ownership, a ruling that Richard must account to Plaintiffs under the share to be determined by the Court, and an appropriate accounting of all past revenues received by Richard and

anyone acting in concert with him relating to the Zahir Catalog.

WHEREFORE, Plaintiffs seek judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant Richard Zahir as follows:

1. That the Court find that the co-owners of the rights in the Zahir Catalog are Plaintiffs, Fakhria and Shabnam Zahir, and Defendant Richard Zahir;

2. That the Court issue an order requiring an accounting of all profits obtained by Defendant Richard Zahir from exploitation of the Zahir Catalog and an order that Defendant, and any third party that has revenues attributable to his direct or indirect exploitation of the Zahir Catalog, holds all such profits— including those received by YouTube, CD Baby, Spotify, Facebook, and other retailers and distributors—in a constructive trust for delivery to Plaintiffs after the Court's ruling on ownership;

3. That the Court issue an order requiring Defendant Richard Zahir to pay to Plaintiffs all such actual damages and profits attributable to the unpaid use of the Zahir Catalog by him and those acting in concert with him in an amount to be proven at trial;

4. That the Court award Plaintiffs their attorney's fees where available under the law;

5. That the Court award prejudgment interest on all damages awarded by this Court;

6. That the Court award Plaintiffs compensatory and punitive damages for harm caused by Defendant's actions; and

7. That the Court award any other relief that the Court deems just and proper.

Dated: January 29, 2025                    ETHAN JACOBS LAW CORPORATION

                                           By:   /s/ Ethan Jacobs
                                                 ETHAN JACOBS
                                                 Attorneys for Plaintiffs
                                                 Fakhria Zahir and Shabnam Zahir

## **DEMAND FOR JURY TRIAL**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action on any issue triable of right by a jury.

Dated: January 29, 2025                    ETHAN JACOBS LAW CORPORATION

                                           By:   /s/ Ethan Jacobs
                                                 ETHAN JACOBS
                                                 Attorneys for Plaintiffs
                                                 Fakhria Zahir and Shabnam Zahir