SERGIY M. SIVOCHEK (SBN 270667)
Sivochek IP Law Center
12450 Magnolia Blvd # 4071
Valley Village, CA 91607
Telephone: (323) 201-2701
Email: sivochek@sivochek.com

MICHAEL MCCOLLUM (SBN 235447)
Lead Trial Counsel
McCollum Counsel, Inc.
1500 W. Alhambra Rd,
Alhambra, CA 91801-2009
Telephone: (213) 534-6070
Email: michael@mccollumcounsel.com

*Attorneys for Defendant*
*RICHARD ZAHIR*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAKHRIA ZAHIR and SHABNAM ZAHIR,<br><br>          Plaintiffs,<br><br>vs.<br><br>RICHARD ZAHIR a/k/a RISHAD ZAHIR<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:25-cv-782-JFW-AS<br>Honorable John F. Walter<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12(B)(1)**<br><br><br>Hearing Date: January 5, 2026<br>Time: 1:30 P.M.<br>Courtroom: 7A<br>Complaint filed: January 29, 2025 |

**DEFENDANT'S NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
**PLEASE TAKE NOTICE** that on January 5, 2026, at 1:30 P.M., or as soon
thereafter as this matter can be heard, in the Courtroom of the Honorable John F.
Walter of the above-entitled Court, located at the First Street Courthouse, 350 W.
1st Street, Los Angeles, California 90012, in Courtroom 7A, Defendant Rishad
Zahir ("Defendant") will and hereby does move to dismiss Plaintiffs' Complaint
(the "Complaint").

This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1)
on the grounds that the Court lacks subject-matter jurisdiction over all claims
asserted in the Complaint, because:

1.     Plaintiffs' claims do not arise under the Copyright Act, and therefore
the Complaint fails to establish federal question jurisdiction. The claims arise
instead under foreign and state family and probate law.

2.     The probate exception to federal subject-matter jurisdiction
independently bars the Court from adjudicating Plaintiffs' asserted heirship-based
claims; and

3.     Plaintiffs lack Article III standing to assert the alleged copyright co-
ownership claims.

Defendant does not seek dismissal of his own counterclaims at this time.
Defendant's counterclaims rest on independent federal jurisdictional grounds,
including the Copyright Act, and therefore remain properly before the Court
regardless of the disposition of Plaintiffs' claims.

This Motion is based on this Notice of Motion, the accompanying
Memorandum of Points and Authorities, the Declaration of Michael McCollum,
and all pleadings, papers, and documents on file herein, and any other written or
oral submissions that may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 20, 2025.

DATED: December 5, 2025

By: /s/ *Sergiy M. Sivochek*
SERGIY M. SIVOCHEK

Sivochek IP Law Center
12450 Magnolia Blvd # 4071
Valley Village, CA 91607
Telephone: (323) 201-2701
Email: sivochek@sivochek.com

DATED: December 5, 2025

By: /s/ *Michael McCollum*
MICHAEL MCCOLLUM

McCollum Counsel, Inc.
1500 W Alhambra Rd,
Alhambra, CA 91801-2009
Telephone: (213) 534-6070
Email: michael@mccollumcounsel.com

*Attorneys for Defendant*
*Richard Zahir*

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ......................................1

**I.     INTRODUCTION**........................................................................1

**II.   STATEMENT OF FACTS** .............................................................2

**III.    LEGAL STANDARD** ...................................................................5

**IV.    ARGUMENT**...............................................................................6

  A.  THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS ARISE FROM FOREIGN AND STATE FAMILY, INHERITANCE, AND PROPERTY LAW, NOT THE COPYRIGHT ACT. ................................................................6

  B.  THE COURT LACKS SUBJECT-MATTER JURISDICTION UNDER THE PROBATE EXCEPTION. ...................................................................................12

  C.  PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT COPYRIGHT-OWNERSHIP CLAIMS AND TO SEEK AN ACCOUNTING OF PROFITS. ...............................................18

  D.  DEFENDANT'S COUNTERCLAIMS ARE BASED ON INDEPENDENT JURISDICTIONAL GROUNDS AND ARE PROPERLY BEFORE THE COURT. ...............................................22

**V.   CONCLUSION**...............................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ass'n of Am. Med. Colls. v. United States,*
217 F.3d 770 (9th Cir. 2000). ...................................................................6

*Balestra v. Balestra-Leigh*,
No. 3:09-CV-00563-RCJ-(RAM), 2010 U.S. Dist. LEXIS 85074 (D. Nev. July 15, 2010) ................................................................................13

*Buechold v. Ortiz,*
401 F.2d 371 (9th Cir. 1968) ................................................................11

*Czarnetzki v. Andrews*,
No. 2:12-06923 (WJM), 2012 U.S. Dist. LEXIS 164953 (D.N.J. Nov. 19, 2012) .17

*Dolch v. United. Cal. Bank,*
702 F.2d 178 (9th Cir. 1983) ........................................................7, 9

*Don Johnson Prods. v. Rysher Entm't, Inc*.,
No. CV 09-1906 MMM (JCx), 2009 U.S. Dist. LEXIS 81594 (C.D. Cal. June 8, 2009) ................................................................................12

*Elan Assocs., Ltd. v. Quackenbush Music, Ltd*.,
339 F. Supp. 461 (S.D.N.Y. 1972)........................................................10

*Estate of Sanders*,
2 Cal. App. 4th 462, 3 Cal. Rptr. 2d 536 (1992)........................................15

*Estate of Tarlow*,
109 Cal. App. 5th 124, 330 Cal. Rptr. 3d 178 (2025) ...........................13

*Estate of Vanderburg*,
No. 7:07-CV-048-R, 2007 U.S. Dist. LEXIS 103418 (N.D. Tex. Apr. 4, 2007)....13

*Flanigan v. Sec.-First Nat'l Bank*,
41 F. Supp. 77 (S.D. Cal. 1941)........................................................13

*Grondal v. United States*,

2012 U.S. Dist. LEXIS 19398 (E.D. Wash. Feb. 16, 2012) ......................................5

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,

153 F.3d 82 (2d Cir. 1998)..................................................................................9

*Kokkonen v. Guardian Life Ins. Co.*,

511 U.S. 375 (1994)............................................................................................6

*Lujan v. Defenders of Wildlife*,

504 U.S. 555, 112 S. Ct. 2130 (1992)..................................................................18

*Marshall v. Marshall*,

547 U.S. 293, 126 S. Ct. 1735 (2006)..................................................................12

*Muse v. Mellin*,

212 F. Supp. 315 (S.D.N.Y. 1962), aff'd, 339 F.2d 888 (2d Cir. 1964) ..................7

*Oddo v. Ries*,

743 F.2d 630 (9th Cir. 1984) ............................................................................12

*Roberts v. Corrothers*,

812 F.2d 1173 (9th Cir. 1987) .............................................................................6

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*,

816 F.2d 1191 (7th Cir. 1987) .............................................................................7

*Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*,

336 F.3d 982 (9th Cir. 2003) .............................................................................8

*Sowande v. Moore*,

No. 12-5273 PA (DTBx), 2012 U.S. Dist. LEXIS 199164 (C.D. Cal. Sep. 24,

2012) .............................................................................................. 7, 10

*Stepdesign, Inc. v. Research Media, Inc.*,

442 F. Supp. 32 (S.D.N.Y. 1977) .......................................................................10

*Surgick v. Cirella*,

TABLE OF AUTHORITIES

No. 09-3807 (NLH/KMW), 2012 U.S. Dist. LEXIS 59106 (D.N.J. Apr. 27, 2012) ................................................................................................... 14, 17

*T. B. Harms Co. v. Eliscu,*
339 F.2d 823 (2d Cir. 1964) ...................................................................... 8

*Topolos v. Caldewey,*
698 F.2d 991 (9th Cir. 1983) ............................................................. 7, 10

*Urick v. Urick,*
15 Cal. App. 5th 1182, 224 Cal. Rptr. 3d 125 (2017) ............................. 14

*Va. House of Delegates v. Bethune-Hill,*
587 U.S. 658, 139 S. Ct. 1945 (2019) ..................................................... 18

*Vestron, Inc. v. Home Box Office, Inc.,*
839 F.2d 1380 (9th Cir. 1988) .................................................................. 7

*Warren v. Fox Family Worldwide, Inc.,*
328 F.3d 1136 (9th Cir. 2003) .................................................................. 6

*Warth v. Seldin,*
422 U.S. 490 (1975) ................................................................................ 18

*Welker v. Metropolitan Life Ins. Co.,*
502 F. Supp. 268 (C.D. Cal. 1980) .......................................................... 11

*Wells v. Universal Pictures Co.,*
166 F.2d 690 (2d Cir. 1948) .................................................................... 10

*West Mining Council v. Watt,*
643 F.2d 618 (9th Cir. 1981) .................................................................... 6

*White v. Lee,*
227 F.3d 1214 (9th Cir. 2000) .................................................................. 5

*William M. v. Superior Court (Dana F.),*
225 Cal. App. 3d 447 (1990) .................................................................. 15

*XCEL Data Sys., Inc. v. Best,*

TABLE OF AUTHORITIES

2009 U.S. Dist. LEXIS 34904 (E.D. Cal. Mar. 31, 2009) .......................................10

*Zimmerman v. City of Oakland,*

255 F.3d 734 (9th Cir. 2001) .................................................................................6

**Federal Statutes and Rules**

17 U.S.C. § 101 .................................................................................................6, 9

17 U.S.C. § 104A .............................................................................................2, 9

17 U.S.C. § 512(f) ...............................................................................................22

28 U.S.C. § 1367(a) ............................................................................................22

28 U.S.C. §§ 1331 ..........................................................................................6, 22

28 U.S.C. §§ 1338 ..........................................................................................6, 22

Fed. R. Civ. P. 12(b)(1) .................................................................................5, 23

Fed. R. Civ. P. 12(h)(3) .......................................................................................5

**Other Authorities**

*Berne Convention for the Protection of Literary and Artistic Works*,

Sept. 9, 1886, as revised July 24, 1971, and amended Sept. 28, 1979, S. Treaty

Doc. No. 99-27 (1986), ........................................................................................2

*California Family Code* § 7551 .........................................................................14

*California Probate Code* §§ 11700–11701 .......................................................13

*Marrakesh Agreement Establishing the World Trade Organization*,

Apr. 15, 1994, 1867 U.N.T.S. 154 .......................................................................2

*Uruguay Round Agreements Act ("URAA")*,

Pub. L. No. 103-465, § 514, 108 Stat. 4809 (1994)............................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case concerns ownership of property rights, including U.S. copyrights, in the "Zahir Catalog," the body of musical works and artistic legacy of Ahmad Zahir, a renowned Afghan singer whose music defined Afghanistan's modern era in the 1960s and 1970s and who died in Afghanistan in 1979.

Defendant is an undisputed child and the only son of Ahmad Zahir, and his status as an heir and at least a partial copyright owner is uncontested. Plaintiffs ask this Court to declare that they, together with Defendant, are co-owners of the Zahir Catalog and are entitled to an accounting of profits.

Plaintiffs' claims must be dismissed in their entirety on three independent grounds, each sufficient on its own to require dismissal.

***First***, this Court lacks subject-matter jurisdiction because Plaintiffs' claims do not arise under the Copyright Act. Plaintiffs' asserted basis for copyright co-ownership rests entirely on an unproven and vigorously disputed claim of heirship: that Plaintiff Fakhria Zahir became Ahmad Zahir's lawful wife following his purported divorce from Defendant's mother, Najia Zaman, and that Plaintiff Shabnam Zahir is his daughter. The rights they seek to vindicate therefore depend wholly on determinations of family status and succession. The dispute they present is, in substance, an heirship and succession controversy governed by foreign and state family and probate law, not by any right created by federal copyright law.

***Second***, the core of Plaintiffs' case is a de facto request that this Court validate them as heirs of Ahmad Zahir and effectively administer his estate. The probate exception removes such matters from federal jurisdiction. Plaintiffs' own discovery efforts confirm the true nature of their claims. Their attempt to compel Defendant to undergo DNA testing as a surrogate for proving Shabnam's parentage is, in

1

substance, an attempt to litigate paternity and obtain judicial validation of heirship. That determination belongs exclusively to state probate courts or the appropriate foreign tribunals, not a federal court.

**Third,** Plaintiffs lack Article III standing because they cannot demonstrate any legally cognizable interest in the works of Ahmad Zahir. Plaintiffs have never established, through any competent or contemporaneous evidence, that they are legal heirs under the governing foreign or state law. Their asserted familial status rests entirely on self-generated, post hoc documents that merely repeat information they supplied, not on any authentic or legally recognized marriage, paternity, or succession record. Without a valid heirship determination or any legitimate chain of title, Plaintiffs hold no ownership interest in the copyrights they claim and therefore cannot show a concrete, legally protected injury.

## II.    STATEMENT OF FACTS

All works encompassed by the so-called "Zahir Catalog" that are the subject of this dispute, were authored by Ahmad Zahir in Afghanistan during the 1960s and 1970s and remained in the public domain in the United States for decades before their restoration in 2016.[1]

---

[1] In 1994, Congress enacted the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, § 514, 108 Stat. 4809, 4973 (1994), implementing the Marrakesh Agreement establishing the World Trade Organization (WTO) and its Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS). The URAA amended the Copyright Act by adding 17 U.S.C. § 104A, which automatically restored U.S. copyright protection to certain foreign works that had fallen into the public domain, provided that the works originated in a country that was a member of the Berne Convention or the WTO.

Afghanistan acceded to the WTO on July 29, 2016. Accordingly, under 17 U.S.C. § 104A, copyright protection for Afghan works was automatically restored in the United States as of that date.

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

All relevant operative events concerning marriage, divorce, paternity, and inheritance occurred in Afghanistan more than forty years ago. Before addressing the legal issues raised by this Motion, it is therefore helpful to briefly summarize the background of Ahmad Zahir's life, legacy, and family.

Ahmad Zahir was born on June 14, 1946, in Kabul, Afghanistan, to a prominent family. His father, Dr. Abdul Zahir, was a royal court physician and senior political figure during King Zahir Shah's reign, and at one point served as Prime Minister of Afghanistan.

Ahmad Zahir rose to unparalleled fame during the 1960s and 1970s and became one of the most celebrated artists in Afghan history. His music defined an era and his public life was extensively covered by Afghan media. He was widely known as "the Elvis of Afghanistan," a reflection of both his artistic stature and his immense public visibility. He died without a will in Afghanistan on June 14, 1979. *See* Plaintiffs' Complaint ("Compl.") ¶¶ 13–15, Dkt. 1 at 4–5.

The 1969 wedding of Defendant's mother, Najia Zaman, and Ahmad Zahir was a widely publicized national event, attended by Afghan dignitaries and cultural figures, including members of the royal family. Plaintiffs do not dispute that Ahmad Zahir was lawfully married to Najia Zaman. *See* Compl. ¶ 8, Dkt. 1 at 3.

Although Ahmad Zahir and Najia Zaman later separated, Plaintiffs have presented no credible evidence that they ever legally divorced, and Defendant has no knowledge of any such divorce having occurred. *See* Compl. ¶ 8, Dkt. 1 at 3; Defendant's Response ¶ 8, Dkt. 19 at 8.

Defendant Richard Zahir (also known as Rishad Zahir) was born on February 21, 1970, in Seattle, Washington, to the lawful marriage of Ahmad Zahir and Najia Zaman. Plaintiffs admit Defendant's status as Ahmad Zahir's son (Compl. ¶ 1, Dkt. 1 at 2). Plaintiffs also admit that Defendant is, at a minimum, a co-owner of the

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

copyrights in Ahmad Zahir's works. *See* Def.'s Countercls. ¶ 1, Dkt. 19 at 14 and Pls.' Answer ¶ 1, Dkt. 22 at 2.

Plaintiffs Fakhria and Shabnam Zahir allege that they are, respectively, the widow and daughter of Ahmad Zahir (Compl. ¶ 1, Dkt. 1 at 1). However, Plaintiffs produced no contemporaneous marriage certificate confirming marriage of Fakhria Zahir with Ahmad Zahir and admitted that no photographs exist from the alleged marriage ceremony with Ahmad Zahir. (McCollum Decl. ¶¶ 18–19 and the exhibit thereto). Nor is there any media coverage or other contemporaneous documentation one would reasonably expect for the marriage of a public figure of Ahmad Zahir's prominence.

Additionally, Plaintiff Fakhria Zahir admits that she was married to another man, Haroon Khan Sherzad, during the relevant time period (McCollum Decl. ¶¶ 20-21). Plaintiffs further acknowledge that they possess no documentation confirming the termination of that marriage (McCollum Decl. ¶¶ 22-24).

Similarly, Plaintiff Shabnam Zahir claims to be the daughter of the late Ahmad Zahir and asserts that she was born on June 14, 1979, the very day he died. (Compl. ¶ 18, Dkt. 1 at 5). Yet Plaintiffs admit that they "possess no birth certificate or similar official document of the type that would have been issued under the laws of Afghanistan in effect in or around 1979 identifying Ahmad Zahir as the father of Shabnam Zahir" (McCollum Decl. ¶¶ 14-15).

Additionally, Plaintiffs admit that, during the relevant time period, "Plaintiff Fakhria Zahir has had one or more children with Haroon Khan Sherzad." (McCollum Decl. ¶¶ 27-28) and also admit that Fakhria "had one or more children fathered by a man other than Ahmad Zahir" (McCollum Decl. ¶¶ 25-26). These admissions squarely place at issue whether Shabnam is among the children fathered by someone other than Ahmad Zahir.

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

Plaintiffs also admit that they do not possess any will, probate order, or other legal document establishing that either Plaintiff inherited a copyright interest in any work by Ahmad Zahir (McCollum Decl. ¶¶ 6-7). They also concede that neither Plaintiff has ever obtained a written assignment of copyright from Ahmad Zahir or from any of his lawful heirs (McCollum Decl. ¶¶16-17).

Additionally, Plaintiffs acknowledge that no court in any country has ever issued a ruling establishing the legal relationship of either Plaintiff to Ahmad Zahir (McCollum Decl. ¶¶ 8-9), and no court has ever adjudicated or confirmed that either Plaintiff has any right to inherit tangible or intangible property, including copyrights, from him (McCollum Decl. ¶ 10-11). Plaintiffs likewise admit that no administrative, municipal, or local agency in Afghanistan has ever recognized them as heirs entitled to inherit property, including copyrights, from Ahmad Zahir (McCollum Decl. ¶¶ 12-13)

The foregoing facts underscore the complete absence of credible evidence of Plaintiffs' claimed status as Ahmad Zahir's widow, daughter, or legal heirs.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject-matter jurisdiction. A motion to dismiss under Rule 12(b)(1) may be raised at any stage of the proceedings. *See Fed. R. Civ. P. 12(h)(3)* ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) *See also Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at *11-13 (E.D. Wash. Feb. 16, 2012) (A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of

any factual support for subject-matter jurisdiction despite the pleading's sufficiency (factual attack)).

For a facial attack, all allegations of fact in the complaint are accepted as true. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). For a factual attack, evidence outside the pleadings may be considered to resolve factual disputes. *See Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 778 (9th Cir. 2000).

Where jurisdiction is intertwined with the merits, the court must "assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1138 (9th Cir. 2003). In reviewing the allegations in a complaint, courts will not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Subject-matter jurisdiction is a threshold requirement, and the burden of establishing subject-matter jurisdiction rests squarely with the plaintiff. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

## IV.   ARGUMENT

### A. This Court lacks subject-matter jurisdiction because Plaintiffs' claims arise from foreign and state family, inheritance, and property law, not the Copyright Act.

On its face, Plaintiffs frame this lawsuit as one arising under the Copyright Act, 17 U.S.C. § 101 et seq., and assert that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. However, Plaintiffs do not seek any remedy for copyright infringement or any other relief actually provided by the Copyright Act. Nor do they allege, or have any basis to allege, that Defendant violated any specific provision of the Copyright Act or any other federal statute. Instead, Plaintiffs assert a

single cause of action: a claim for "Declaration of Co-Ownership," through which they ask this Court to declare that they are "co-owners of the rights in the Zahir Catalog" and to compel an accounting of profits. Dkt. 1, Compl. ¶ 6. Plaintiffs' case therefore rests entirely on the premise that simply asserting property rights in U.S. copyrights and referencing the Copyright Act in the Complaint, without more, automatically presents a federal copyright question. It does not.

Courts have long recognized that the mere fact a dispute involves a copyright does not, by itself, convert it into a claim "arising" under the Copyright Act, nor does the mere mentioning of a federal statute in a complaint confer federal jurisdiction. *See Vestron, Inc. v. HBO, Inc.*, 839 F.2d 1380, 1380 (9th Cir. 1988) ("Although an action may clearly involve a copyright, this fact alone does not satisfy federal jurisdictional requirements."); *Muse v. Mellin*, 212 F. Supp. 315, 316 (S.D.N.Y. 1962), aff'd, 339 F.2d 888 (2d Cir. 1964) ("[T]he word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention."); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1192 (7th Cir. 1987) ("[M]erely naming a federal statute in a complaint will not confer federal jurisdiction if the only relief the plaintiff actually wants is based on state rather than federal law.")

Courts decide whether a case arises under the copyright laws "by focusing on the nature of the principal claim asserted by the plaintiff." *Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir. 1983). This has variously been described as the "primary and controlling purpose," the "principal issue," the "fundamental controversy," and the "gist" or "essence" of the plaintiff's claim. *Id.* (citations omitted); *see also Dolch v. United. Cal. Bank,* 702 F.2d 178, 180 (9th Cir. 1983); *Sowande v. Moore*, No. 12-5273 PA (DTBx), 2012 U.S. Dist. LEXIS 199164, at *2-3 (C.D. Cal. Sep. 24, 2012).

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

The United States Court of Appeals for the Ninth Circuit follows the majority rule articulated in *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 824 (2d Cir. 1964), to determine whether copyright subject-matter jurisdiction exists. *See Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 983 (9th Cir. 2003). Under the rule, an action "arises under" the Copyright Act "if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproductions, or asserts a claim requiring construction of the Act or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. In summary, the T.B. Harms test requires the district court to exercise jurisdiction if: (1) the complaint asks for a remedy expressly granted by the Act; (2) the complaint requires an interpretation of the Act; or (3) federal principles should control the claims" *Id*.

Here, Plaintiffs' "co-ownership" claim depends entirely on their assertion that they are the widow and daughter of Ahmad Zahir and therefore inherited rights to his property when he died in Afghanistan in 1979. The essence of their case, and its primary and controlling purpose, is the establishment of property rights through inheritance, and the fundamental controversy arises from Defendant's rejection of their asserted status as the author's widow and daughter. Plaintiffs' claims thus rise or fall on whether they can prove they are legal heirs of Ahmad Zahir, a determination governed by Afghan family and inheritance law and, potentially, by state-law principles concerning the recognition of foreign marriages, divorces, and determinations of parentage.

Resolving this controversy does not require the application of any specific remedy provided by the Copyright Act, nor does it require any interpretation of the Act. Beyond some limited definitional references that point directly to foreign and

8

state law [2], the Copyright Act does not address questions of copyright inheritance. It is entirely silent on how to determine the validity of a marriage or divorce, establish parentage, or resolve matters of succession or heirship. It certainly does not speak to succession issues arising in Afghanistan in 1979 involving works to which U.S. copyright law did not then apply at that time. Nor is there any basis for applying federal principles to resolve issues of marriage, paternity, or inheritance that occurred abroad more than forty years ago, even if the asserted inheritance includes copyrights. Federal courts have long recognized that copyright ownership is a property issue governed by the law of the jurisdiction with the most significant relationship to the parties and the work, rather than by the Copyright Act. *See, e.g., Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998) ("Copyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with "the most significant relationship" to the property and the parties.") Accordingly, none of the three prongs of the T.B. Harms test is satisfied.

Federal courts have consistently dismissed copyright complaints that present only state law issues, such as questions of contract, including disputes over the validity of assignments. *See e.g., Dolch v. United Cal. Bank, 702 F.2d 178, 179 (9th Cir. 1983)* ("[T]he conditions for valid assignment were not federal questions, but questions of state contract law, and appellant had failed to raise a substantive federal

---

[2] Section 104A(b) of the Copyright Act provides that ownership of a "restored work" initially vests "in the author or initial rightholder of the work as determined by the law of the source country of the work." 17 U.S.C. § 104A(b). Likewise, Section 101 defines an author's "widow" by reference to "the law of the author's domicile at the time of his or her death," thereby channeling the determination to the applicable foreign or state domestic-relations law rather than creating any federal rule of succession. 17 U.S.C. § 101.

9

law claim"); *Wells v. Universal Pictures Co*., 166 F.2d 690, 691 (2d Cir. 1948) (The court did not have subject matter jurisdiction because the plaintiff "failed to allege any violation of rights protected by federal statutes, and alleged only violations of common law rights."); *Stepdesign, Inc. v. Research Media, Inc*., 442 F. Supp. 32, 33 (S.D.N.Y. 1977) (The court dismissed plaintiff's action for lack of jurisdiction noting that "plaintiff's action was primarily an action for breach of contract in which she sought declaration of reversion of her copyrights and secondarily a copyright infringement action.")

Similarly, courts recognized that lawsuits merely seeking to establish valid title to copyrighted works do not arise under the Copyright Act. Generally, when copyright "ownership is the sole question for consideration . . . federal courts [are] without jurisdiction." *Topolos*, 698 F.2d at 994; *see also Vestron, Inc. v. HBO, Inc.*, 839 F.2d 1380, 1380 (9th Cir. 1988)("[W]here a suit is for a naked declaration of copyright ownership without a bona fide infringement claim, federal courts decline jurisdiction."); *XCEL Data Sys., Inc. v. Best*, 2009 U.S. Dist. LEXIS 34904, at *21 (E.D. Cal. Mar. 31, 2009) ("questions involv[ing] the 'bare declaration of ownership' . . . fall[] within the purview of state law, as opposed to the question presented here which demands application of federal copyright laws to determine the parties' respective ownership interests"); *Sowande v. Moore*, No. 12-5273 PA (DTBx), 2012 U.S. Dist. LEXIS 199166, at *4 (C.D. Cal. Sept. 24, 2012) (dismissing for lack of subject matter jurisdiction the lawsuit of the daughter of a Nigerian composer, despite one of the causes of action being brought under the Copyright Act; *citing Elan Assocs., Ltd. v. Quackenbush Music, Ltd*., 339 F. Supp. 461, 462 (S.D.N.Y. 1972)**,** and holding that the suit "is merely one to establish valid title" to copyrighted works and "[t]herefore, the case is not one which arises under the copyright laws so as to invoke the jurisdiction of this Court").

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

In short, Plaintiffs have come to this Court to litigate a long-standing dispute over domestic relations, paternity, estate rights, and property heirship that arises entirely under foreign and state law. A dispute of this nature does not support federal subject-matter jurisdiction.

Furthermore, it is well recognized that the federal courts must decline jurisdiction of cases concerning domestic relations when the primary issue concerns the status of parent and child or husband and wife. *See Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968) and cases cited therein.

Here, Plaintiff Fakhria's claims necessarily require the Court to determine whether she was legally married to Ahmad Zahir at the time of his death. That question, in turn, requires the Court to determine: (1) whether Fakhria had lawfully divorced her prior husband before allegedly marrying Ahmad Zahir; (2) whether Ahmad Zahir had lawfully divorced Defendant's mother, Najia Zaman, before the alleged marriage to Fakhria; (3) whether a valid marriage ceremony ever took place between Fakhria and Ahmad Zahir; and (4) whether that marriage, if it occurred, remained legally intact at the time of his death. These are classic domestic relations questions concerning the legal status of husband and wife, and they fall squarely within the jurisdictional bar recognized in *Buechold* and its progeny.

Similarly, Plaintiff Shabnam's claims depend on whether she is the biological or legally recognized daughter of Ahmad Zahir. That issue cannot be adjudicated without first determining the legal status of parent and child.

This case closely parallels *Welker v. Metropolitan Life Ins. Co.*, 502 F. Supp. 268 (C.D. Cal. 1980), where a woman claiming to be the putative spouse of a decedent brought suit to recover life insurance proceeds that had been paid to the decedent's first, legal wife. Applying the *Buechold* doctrine, the district court held it lacked jurisdiction, noting that the plaintiff's entitlement to relief was entirely

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

dependent on her marital status. The court explained that "all relief plaintiff seeks from this action is subsidiary to and dependent upon that status." *Id.* at 270.

The present case goes even further. Plaintiffs seek relief that is not only dependent on Fakhria's alleged marital status but also on the legal parent-child relationship between Ahmad Zahir and Shabnam. Because Plaintiffs' claims are entirely subsidiary to and dependent upon determinations of marital and familial status, this case falls well within the domestic relations exception to federal jurisdiction and must be dismissed on that ground as well.

Lastly, Plaintiffs' request for an accounting of profits plainly does not arise under the Copyright Act. As the Ninth Circuit has made clear, the duty to account "comes from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners," not from any statutory right conferred by the Copyright Act. *Oddo v. Ries*, 743 F.2d 630, 632 (9th Cir. 1984); see also *Don Johnson Prods. v. Rysher Entm't, Inc.*, No. CV 09-1906 MMM (JCx), 2009 U.S. Dist. LEXIS 81594, at *13 (C.D. Cal. June 8, 2009) (An action by a co-owner of a copyright for an accounting does not arise under federal law).

In any event, any right to an accounting is entirely derivative of Plaintiffs' alleged status as co-owners. Because the Court lacks subject-matter jurisdiction over the co-ownership claim, it likewise lacks jurisdiction to adjudicate the accounting claim. Accordingly, the Complaint must be dismissed in its entirety.

**B. The Court lacks subject-matter jurisdiction under the probate exception.**

Federal courts are constrained by the long-standing "probate exception" to both diversity and federal-question jurisdiction. Under this doctrine, federal courts lack authority to "probate or annul a will" or to "administer a decedent's estate." *Marshall v. Marshall*, 547 U.S. 293, 311–12, 126 S. Ct. 1735, 1748 (2006). Because

12

Ahmad Zahir died intestate, the probate exception applies if adjudicating Plaintiffs' claims would require this Court to administer his estate—and it plainly would.

As discussed above, Plaintiffs' coownership claims rest entirely on their alleged inheritance from Ahmad Zahir, based on their assertions that they are his lawful widow and daughter. Thus, this dispute turns on deeply factual and inherently personal issues of kinship, heirship and succession, including the underlying marital and paternity questions.

In California, where this Court sits, questions of kinship and heirship are precisely the type of inquiry that constitute core functions of a probate proceeding. Division 7 of the California Probate Code is expressly titled "Administration of Estates of Decedents." Chapter 2 of Part 10 of that Division, titled "Determination of Persons Entitled to Distribution," establishes the procedures for determining a decedent's heirs. *See* Cal. Prob. Code §§ 11700–11701.

As the Court of Appeal of California stated, "[t]he primary purpose of Prob. Code, § 11700, is to establish which persons are proper heirs of an estate and therefore entitled to a distribution." *Estate of Tarlow*, 109 Cal. App. 5th 124, 124, 330 Cal. Rptr. 3d 178, 181 (2025). Determining lawful heirs is therefore a quintessential aspect of estate administration, falling squarely within the exclusive jurisdiction of the probate courts. *See, e.g.*, *Flanigan v. Sec.-First Nat'l Bank*, 41 F. Supp. 77, 78 (S.D. Cal. 1941) ("State probate courts alone had jurisdiction to determine the genuineness and validity of wills and questions of heirship."); Balestra v. Balestra-Leigh, No. 3:09-CV-00563-RCJ-(RAM), 2010 U.S. Dist. LEXIS 85074, at *9 (D. Nev. July 15, 2010) ("The determination of heirship and rights in distribution of an estate is clearly at the core of the probate court's functions."); *Estate of Vanderburg*, No. 7:07-CV-048-R, 2007 U.S. Dist. LEXIS 103418, at *2 (N.D. Tex. Apr. 4, 2007) (heirship determination is "clearly within the province of

13

the probate court"); *Surgick v. Cirella,* No. 09-3807 (NLH/KMW), 2012 U.S. Dist. LEXIS 59106, at *10 (D.N.J. Apr. 27, 2012*)* (probate exception barred action "to declare and secure the rights of Plaintiff and unnamed heirs to the estate").

California probate law provides a highly specialized process for determining paternity, kinship and heirship. When a provision of the Probate Code conflicts with the general procedural rules in the California Code of Civil Procedure, the Probate Code controls. *See, for example, Urick v. Urick*, 15 Cal. App. 5th 1182, 1182, 224 Cal. Rptr. 3d 125, 128 (2017) ("The general rules of the California Code of Civil Procedure do not apply when the California Probate Code provides special rules."). These rules exist precisely because heirship and paternity determinations often involve sensitive, fact-intensive issues that affect multiple parties, and California law requires that such determinations occur through the probate system and its built-in procedural protections.

Here, Plaintiffs seek to bypass those safeguards entirely. In this lawsuit, they have insistently threatened to move to compel Defendant, the decedent's undisputed biological son, to undergo DNA testing. *See McCollum De*cl. ¶¶ 33-34; Declaration of Shabnam Zahir ("Zahir Decl."), Dkt. 40 at 12 ("Proposed Stipulation re: DNA"), 19 ("…our motion to compel DNA testing"), 23 ("Plaintiffs' proposed motion to compel DNA testing"), and 39 (first full paragraph). Their obvious purpose is to use Defendant's genetic material as a proxy for establishing Plaintiff Shabnam's alleged biological relationship to the decedent. This is not legitimate copyright discovery. It is, in substance, a posthumous paternity and heirship proceeding that Plaintiffs are attempting to litigate under the guise of a federal copyright case.

California probate law *itself* does not permit this type of maneuver. Family Code section 7551(a) provides that when parentage is at issue, a court may order genetic testing of "the woman who gave birth, the child, and the alleged genetic

---

14

parent." The statute does not authorize purported siblings or other collateral relatives to be joined in paternity proceedings or compelled to undergo genetic testing. *See William M. v. Superior Court (Dana F.)*, 225 Cal. App. 3d 447, 449 (1990) (holding that "the only proper parties to a paternity action are the mother, the child, and any person presumed or alleged to be the father"); *Estate of Sanders*, 2 Cal. App. 4th 462, 469, 3 Cal. Rptr. 2d 536 (1992) (rejecting an attempt to compel a decedent's adult children to provide DNA samples in a putative sibling's paternity claim).

Under these authorities, Defendant would not be a proper party to any paternity determination concerning Plaintiff Shabnam, and Plaintiffs would have *no* basis to demand genetic testing from him in a properly filed probate or parentage action. Their effort to do so here shows that they are attempting to manipulate the federal forum to obtain relief that California probate law affirmatively forbids.

Plaintiffs' attempt to use federal discovery to manufacture heirship is the very type of improper circumvention of state probate procedures that the probate exception is designed to prevent. Their request for a DNA test, though styled as copyright discovery, confirms that their claims hinge on disputed questions of paternity, marital status, kinship, and heirship. These core probate issues must be resolved, if at all, through the procedural safeguards of California probate law, not in federal court under the guise of a copyright action.

The reality that Plaintiffs are, in substance, pursuing a probate matter is further shown by the nature of the property they claim to co-own. Plaintiffs do not limit their request to a declaration of co-ownership of any specifically identified U.S. copyrights. Instead, they ask to be declared co-owners of the "Zahir Catalog," a term they use throughout the Complaint in sweeping and imprecise fashion to encompass the entire body of musical compositions, sound recordings, and other works created by Ahmad Zahir in Afghanistan before his death in 1979 (Compl. ¶ 1, Dkt 1 at 1)

15

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

They provide no list of works, no copyright registration numbers, and no effort to confine the term to any particular subset of U.S. copyrights. Instead, they invoke it as a catch-all label for Ahmad Zahir's creative legacy, expressly encompassing his "musical compositions and sound recordings." Id. Plaintiffs further allege that they "inherited" this entire body of work upon Ahmad Zahir's death in Afghanistan. *Id*.

The breadth of this definition is not incidental—it forms the cornerstone of Plaintiffs' case. As used throughout their pleadings, the "Zahir Catalog" plainly refers to the principal and only known asset of Ahmad Zahir's estate: his complete artistic output, spanning hundreds of compositions, recordings, lyrics, and performances from the 1960s and 1970s, without regard to where those works were first published or what jurisdiction might recognize copyright protection. Plaintiffs themselves allege that these works were first published in Afghanistan and only later became the subject of copyright filings abroad and in the United States (Compl. ¶¶ 29–36, Dkt. 1 at 8–10).

Plaintiffs themselves recount their ultimately unsuccessful attempt to register the same "Zahir Catalog" with the Afghan Ministry of Information and Culture ("AMIC") in 2020–2021, an effort that underscores the global and extraterritorial scope of the rights they claim (Compl. ¶¶ 31–37, Dkt. 1 at 8–10).

By asserting co-ownership of the Zahir Catalog, including its musical compositions and sound recordings, Plaintiffs are not seeking a declaration of co-ownership of any identified U.S. copyrights. They are instead asserting ownership over the principal corpus of Ahmad Zahir's estate. Their allegations necessarily extend to both the tangible embodiments of those works and the full range of associated intellectual property and moral rights, including copyrights, neighboring and related rights, and all attendant economic and proprietary interests worldwide. In substance, Plaintiffs ask this Court to declare them heirs to Ahmad Zahir's entire

16

artistic estate—its recordings, compositions, and every form of intellectual and proprietary right derived therefrom—and to recognize their claimed entitlement to control and profit from it.

Before the Court can adjudicate any issue of co-ownership of the Zahir Catalog, including its musical compositions and sound recordings, it would first need to determine what assets properly belong to that catalog. That inquiry, together with the threshold determination of heirship, is the core function of estate administration and falls squarely within the province of the probate courts. See *Surgick,* 2012 U.S. Dist. LEXIS 59106, at 3*; Czarnetzki v. Andrews*, No. 2:12-06923 (WJM), 2012 U.S. Dist. LEXIS 164953, at *4–5 (D.N.J. Nov. 19, 2012) (finding probate exception applied where relief required determining "what belongs to the Estate," which "is the same thing as administering the Estate").

In short, before the Court could even consider Plaintiffs' request for a declaration of co-ownership, it would first have to resolve the threshold issues outlined above concerning the legal status of husband and wife and parent and child. In addition, the Court would be required to determine: (1) what assets, on a global scale, are included within the so-called "Zahir Catalog"; (2) who qualifies as a legal heir to Ahmad Zahir's estate under Afghan succession law; and (3) what shares, if any, were inherited by each Plaintiff. These are quintessential matters of heirship and estate administration, and such issues governed exclusively by foreign or state family and probate law, not by federal copyright law.

No matter how Plaintiffs frame their claims, the essence of this action is a bid for judicial recognition of heirship and the division of a decedent's estate, which is exactly the type of proceeding the probate exception bars federal courts from hearing.

17

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

## C. Plaintiffs lack Article III standing to assert copyright-ownership claims and to seek an accounting of profits.

To invoke the jurisdiction of a federal court, a plaintiff must first satisfy the constitutional standing requirements under Article III. The rules of standing are "threshold determinants of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Without proper standing, the Court lacks subject-matter jurisdiction and must dismiss the case. Such a defect cannot be waived or forfeited. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 658, 139 S. Ct. 1945, 1947 (2019).

The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 557, 112 S. Ct. 2130, 2135 (1992).

Here, the core of Plaintiffs' claim is that they co-own the so-called "Zahir Catalog" with Defendant based on their alleged status as the widow and daughter of the decedent author, and that Defendant has wrongfully denied their asserted co-ownership rights. However, Plaintiffs' claimed status as heirs remains entirely unproven and is vigorously disputed, as detailed above.

Plaintiffs attempt to explain their complete lack of documentary proof of heirship status by claiming that they "escaped" Afghanistan with "a single suitcase

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

and a diaper bag," presumably sometime after Ahmad Zahir's death on June 14, 1979. (*Compl. ¶ 20*, Dkt. 1 at 5) While that narrative may invite sympathy, it cannot withstand scrutiny. Plaintiffs, in fact, produced a copy of Ahmad Zahir's death certificate, which they preserved from that same period. It strains credulity to believe that, in selecting the handful of documents important enough to bring across continents, Fakhria Zahir chose to preserve a death certificate but not a single document evidencing her own or her child's alleged familial status. Not a divorce decree showing she had lawfully terminated her marriage to another man during the relevant timeframe. Not a marriage certificate with Ahmad Zahir. Not a birth certificate identifying Shabnam's paternity. Not even a single photograph of the alleged wedding ceremony with an iconic public figure. Nothing at all.

It is also telling that, decades later, Plaintiffs themselves turned to the Afghan legal system when it suited their interests—returning to Afghanistan to file a copyright application with the Afghan Ministry of Information and Culture ("AMIC") in 2020-2021 to claim the Zahir Catalog for themselves. (Compl. ¶ 31, Dkt 1 at 8–9.) In doing so, they demonstrated both that Afghanistan's legal institutions were accessible to them and that they knew how to invoke those institutions when they believed it would serve their interests.

When Defendant formally opposed Plaintiffs' Afghan copyright application in 2021, thereby triggering an administrative review by the Afghan Ministry of Information and Culture ("AMIC") (Compl. ¶ 32, Dkt. 1 at 9), Plaintiffs were fully aware that Defendant was contesting their claimed heirship status. They actively participated in that proceeding, yet even then, when directly confronted with Defendant's challenge, they failed to produce a single credible, official document from any Afghan authority establishing either a lawful marriage between Fakhria and Ahmad Zahir or Shabnam's paternity.

19

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

If such documents ever existed, one would reasonably expect Plaintiffs to have obtained and produced them at that time, particularly because they could have sought authenticated copies of marriage or birth certificates. They also could have pursued an estate proceeding in Afghanistan or any other appropriate jurisdiction to establish their alleged status as the widow, daughter, and heirs of Ahmad Zahir once and for all. They did neither. Their failure to take any such steps, despite actively engaging with the Afghan government when it served their objectives, underscores the absence of any credible evidence supporting their claimed status as lawful heirs of Ahmad Zahir.

Plaintiffs contend that they possess numerous documents purporting to establish their alleged status as the widow and daughter of the late Ahmad Zahir, including Tazkiras (official Afghan identification cards), U.S. and Afghan passports, a U.S. Alien Resident Card, consular records, a purported marriage certificate "retroactively issued by the Government of Afghanistan" and various other records. See Zahir Decl. ¶ 9, Dkt. 41 at 4. However, none of these documents originates from the time or place the alleged events occurred. Instead, every relevant document was created decades after the alleged marriage and parentage, and none cites, attaches, or relies upon any contemporaneous Afghan civil registry entry, court decree, marriage record, birth record, or governmental archive from the 1970s. In other words, not a single document they rely upon reflects an authentic, independent source verifying any marriage between Fakhria and Ahmad Zahir or any record of Shabnam's alleged birth to him.

Instead, the documents share a striking and fatal defect: they merely repeat information provided by Plaintiffs themselves. In essence, Plaintiffs unilaterally began using the surname "Zahir," represented to various agencies that they were the widow and daughter of Ahmad Zahir, and then relied on the resulting documents,

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

which were issued solely on the basis of their own unverified statements, as purported proof that their assertions are true. This is circularity in its purest form. A claimant cannot establish legal heirship by declaring to government agencies that she is an heir and later citing documents generated from those uncorroborated declarations as evidence.

Plaintiffs also attempt to establish their alleged familial relationship with Ahmad Zahir by citing references in interviews in which they describe themselves, or are described by others, as his widow and daughter. Zahir Decl. ¶ 9; Dkt. 41 at 4:8-15.

These materials do not provide any independent evidence of their claimed status. They simply mirror Plaintiffs' own assertions, repeated to third parties and then echoed back in public-facing content. Legal familial status must be established through competent and contemporaneous evidence, not through self-referential narratives or public portrayals.

Plaintiffs' failure to present any credible proof of marriage, paternity, or inheritance underscores that their alleged familial and heirship status is speculative at best. This fundamental deficiency is not a mere evidentiary gap; it strikes at the core of this Court's power to adjudicate Plaintiffs' claims. In the absence of credible evidence, and unless and until Plaintiffs establish their claimed status as the widow and daughter of Ahmad Zahir through a probate proceeding or other legally recognized adjudication, they lack the concrete legal interest required to invoke Article III standing to claim copyright co-ownership. Without such a threshold showing, their claims must be dismissed for lack of subject-matter jurisdiction. Federal courts are not empowered to fill that void by assuming jurisdiction over issues of marriage, paternity, or inheritance, which fall squarely within the competence of foreign and state tribunals.

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:25-cv-782-JFW-AS

Based on the foregoing, Plaintiffs lack Article III standing to claim property rights in the Zahir Catalog, to seek a declaration of copyright ownership, or to seek accounting for profits.

**D. Defendant's counterclaims are based on independent jurisdictional grounds and are properly before the Court.**

Even if the Court dismisses Plaintiffs' Complaint for lack of subject-matter jurisdiction, Defendant's counterclaims remain properly before this Court because they rest on independent jurisdictional bases.

Specifically, Defendant's claim under 17 U.S.C. § 512(f) arises from Plaintiffs' submission of a knowingly false Digital Millennium Copyright Act (DMCA) notice, which caused Defendant substantial financial and reputational harm. The Court can adjudicate this claim entirely within the framework of federal copyright law, without revisiting any probate or heirship issues, because Defendant's status as a child, legal heir, and at least a partial copyright owner is undisputed.

In addition, Defendant asserts a related request for declaratory judgment confirming ownership of U.S. copyrights and state-law counterclaims, including unjust enrichment, constructive trust, and related equitable remedies, that arise from the same nucleus of operative facts as Defendant's federal copyright claims. The Court may therefore exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). Exercising such jurisdiction promotes judicial economy and prevents duplication of proceedings in multiple forums.

Because Defendant's counterclaims seek relief expressly created by federal statute and do not require the application of any foreign, family, or probate law, they fall squarely within this Court's original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Retaining jurisdiction over these counterclaims will permit the Court to resolve the remaining live controversy between the parties without entangling itself

in issues beyond federal authority. Conversely, dismissing the counterclaims would merely postpone the inevitable adjudication of these matters, waste judicial resources, and risk inconsistent outcomes. This Court, already familiar with the parties and the factual record, is best positioned to resolve Defendant's affirmative claims efficiently, fairly, and consistent with the interests of justice.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction under Rule 12(b)(1).

This jurisdictional dismissal should extend only to Plaintiffs' Complaint and not to Defendant's properly pleaded counterclaims, which rest on independent and sufficient grounds for federal jurisdiction and therefore remain before the Court.

DATED: December 5, 2025                    By: /s/ *Sergiy M. Sivochek*
                                           SERGIY M. SIVOCHEK

                                           Sivochek IP Law Center
                                           12450 Magnolia Blvd # 4071
                                           Valley Village, CA 91607
                                           Telephone: (323) 201-2701
                                           Email: sivochek@sivochek.com


DATED: December 5, 2025                    By: /s/ *Michael McCollum*
                                           MICHAEL MCCOLLUM

                                           McCollum Counsel, Inc.
                                           1500 W Alhambra Rd,
                                           Alhambra, CA 91801-2009
                                           Telephone: (213) 534-6070
                                           Email: michael@mccollumcounsel.com

                                           *Attorneys for Defendant*
                                           *Richard Zahir*

23

# CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, I electronically filed the **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT** and that they are available for viewing and downloading from the Courts CM/ECF filing system, and that service will be accomplished through the CM/ECF system to all counsel of record who are registered CM/ECF users. I further certify that on December 5, 2025, a true and correct copy of the foregoing document was served on Plaintiffs Fakhria Zahir and Shabnam Zahir, who are not registered CM/ECF users, by email at the email addresses they provided and to which they have consented to receive service in this action, which is reflected below.

Additionally, a courtesy copy was sent via email to the following parties:

Sergiy M. Sivochek, Esq.
Sivochek IP Law Center
12450 Magnolia Blvd # 4071
Valley Village, CA 91607
Telephone: (323) 201-2701
Email: sivochek@sivochek.com
*Attorneys for Defendant Richard Zahir*

Shabnam Zahir
2301 Beechwood Dr.
Waxhaw, NC 28173
Telephone: (703) 822-3686
Email: shabnamahmadzahir@gmail.com
*///*

1
2
3
4
5

Fakhria Zahir
307 Yoakum Parkway #1607
Alexandria, VA 22304
Telephone: (703) 399-6190
Email: shabnamahmadzahir@gmail.com
*Plaintiffs, pro se*

6
7
8
9
10
11

Dated: December 5, 2025

By: */s/ Neslly Herrera*
NESLLY HERRERA
McCollum Counsel
1500 W. Alhambra Rd,
Alhambra, CA 91801-2009
Telephone: (213) 534-6070
Email: neslly@mccollumcounsel.com

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 2 -
CERTIFICATE OF SERVICE